DISTRICT OF NH
FILED

**Exhibit 1: Plaintiff's May 20, 2025, OSHA Re-Review/Appeal (including the final June 26, 2025, OSHA findings showing missing filings).** 2026 FEB -4 P 6: 59

24 HOUR DEPOSITORY

**Exhibit 2: January 22, 2026, Emergency Motion/order to the assigned ALJ, formally identifying the incomplete administrative record.**

**Exhibit 3: NMB/PWA Arbitrator Bonnie Weinstock's Denial of Continuance (Jan 9, 2026)**

**Exhibit 4: Exhibit 4: Renewed Notice to ALPA regarding Jurisdictional and Due-Process Defects (February 3, 2026)**

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW HAMPSHIRE**

Civil Action No. _____

Edward Farley,

Plaintiff,

v.

Delta Air Lines, Inc.; and

ALPA (Airlines Pilot Association, International); and

United States Department of Labor; and

Occupational Safety and Health Administration; and

Office of Administrative Law Judges, and

National Mediation Board

Defendants.

**Exhibit 1: Plaintiff's May 20, 2025, OSHA Re-Review/Appeal (including the final June 26, 2025, OSHA findings showing missing filings).**

# UNITED STATES DEPARTMENT OF LABOR
## OSHA OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION
## DIRECTORATE OF WHISTLEBLOWER PROTECTION PROGRAMS
### Washington, DC

OALJ Case No.: 2025-AIR-00023
OSHA Case No.: 301036234

In the Matter of:
**EDWARD FARLEY,** *Complainant*
*Vs.*
**DELTA AIR LINES, INC.,** *Defendant*

## Complainant Edward Farley's Request Re-Review of OSHA's March 13, 2025 and March 5, 2025 Findings

### 1. OSHA errors in its findings dated March 13, 2025 (OSHA Agreed) and May 5, 2025

There are grossly flawed Investigation including errors in the findings. By not conducting investigation thoroughly and incorporating all relevant updated declarations by the Complainant (May 21, 2023- January 26, 2025), the Agency's inaccuracies of supporting finding facts, the Agency's omitted critical evidence in 2 unrecognized 1st and 2nd Amended Declarations, and omitted Delta declaration response defaults to both July 7, 2024, and January 26, 2025, are highlighted:

The January 26, 2025, 2nd Amended Declaration has all the direct fundamental evidence required for a fully merited OSHA investigation in the Complainant's favor.

A March 28, 2025, re-review was requested by Complainant after the initial investigation was deemed flawed, as it was not conducted fairly or in accordance with applicable laws. This involved issues with the investigation process, the collection of evidence, the fairness of the findings and negligent overlook of relevance to due process referencing OSH Act Section 11c to claim. Mr. Robert **Swick**, Chief, Division of Field Operations OSHA/DWPP U.S. Department of Labor wrote a May 1, 2025, email to the Complainant stating "I have been in touch with the New York City office about your case. ***We AGREE that the office should have also docketed your***

*case under Section 11(c) as you requested.* Consequently, the New York City office will be issuing you findings under Section 11(c) in the coming days. Please send your request for review to RFR@dol.gov within 15 days of receiving the findings." As the Complainant reiterates the importance of action over words, OSHA admitted its own negligence in potentially unlawfully dismissing the Complainant's claim unless he himself was not the oversight.

The Secretary Findings state "The complaint was timely filed. Complainant claims he received a letter of Investigation & Removal of Service on May 17, 2024. On June 11, 2024, Complainant amended his complaint alleging a violation of the Act (OSH Act 11c) within the 30-day statute period." This is NOT accurate evidence for findings. Correction to findings: The letter claimed by OSHA was dated April 9, 2024 (06-11-2024 Declaration exhibit E: Delta misspelled Complainant's name). Correction to findings: On June 11, 2024, the Complainant did not amend his complaint, he added declarations within 20 days of his OSHA 05-21-2024 complaint online form submittal receipt (as ordered as requested by OSHA May 22, 2024, letter stating "If you have not already done so, **within 20 days** of receiving this letter, please email the investigator (**AND** send to all named parties) any evidence related to the complaint, such as notes, minutes, letters, emails, texts, voice messages, etc.")

The OSHA investigators misapplied reliant facts. The Complainant filed his declarations to his limited May 21, 2024, Complaint (per actual OSHA complaint form) on June 11, 2024. (This was not an amended complaint it was the original declaration. The Respondent cancelled their first scheduled meeting with Complainant dated May 28, 2024, about letter of investigation and removal dated April 9, 2024. This meeting was in violation of cba 18E1 (due process of discipline and discharge) that the Complainant relied upon the Respondent and his Union to comply. Neither complied. The Respondent canceled the meeting May 27, 2024, because they had not yet manipulated another false training failure allegation of December 13, 2023, illegally missing from record until June 26, 2024 (6.5 months late). See Complainant's 2nd Amended Declaration dated January 26, 2025.

**The Respondent made 3 more false or improper allegations in their only OSHA response submittal. The Respondent DEFAULTED in their response to the Complainant's updated Amendments dated July 7, 2024, and January 26, 2025.** In the Respondent's only response declaration dated July 11, 2024, they were responding to only the Complainant's June 11, 2024, original declaration (noted on page 8). The Complainant has already explained false and illegal allegations by Respondent from October 2023-December 2023. Yet in the Respondent's response declaration pages 2-3 the Respondent made more false allegations. They claimed on December 13, 2013, the Complainant received a B grade. **Per Complainant's 06-11-2024 Exhibit C** submittal, there is no code for B, there is no evidence whatsoever of this false illegitimate claim. Then the Respondent falsely claims the Complainant had special training March 2016. **Per Complainant's 06-11-2024 Exhibit C** submittal, there is no evidence whatsoever of this false illegitimate claim. The Respondent refers to an unsatisfactory grade on 12-8-2022 regarding a system validation test. What the Respondent fails to admit, is the FARs require pilots to be attentive and current to the aircraft they are qualified. Delta's curriculum requires pilots transitioning from one equipment to another (in this case B737 to B757/767) to take an immediate intensive and timed electronic system validation test to new equipment BEFORE any training commences. In other words, the pilot must completely train themselves to take an intensive system test on new equipment with little to no time transitioning from a

previous equipment where they were required to maintain 100% effective knowledge. This makes no logical sense and is illegal to AQP effective training, even the ground instructor agreed.

The Complainant filed a 1st Amended Complaint (with further relevant supportive evidence) on July 7, 2024 (never mentioned by OSHA investigators in either March 13, 2025, or May 5, 2025, findings). The Complainant filed a 2nd Amended Complaint (with further relevant supported evidence, including termination) on January 26, 2025 (never mentioned by OSHA investigators in either March 13, 2025, or May 5, 2025, findings). Between the two amended complaint filings, the Complainant was in continuous written contact with the OSHA investigators with confirmed receipt of critical evidence that apparently was irresponsibly and negligently never considered. Delta never responded to either the Complainant's 1st or 2nd Amended declarations, especially suspicious when the Complainant highlighted OSHA enforcement to refer Delta's false statements made in their July 11, 2024, only response to the Department of Justice for criminal prosecution review.

On February 26, 2025, the Complainant advised investigators he requested to personally meet with them with his right to do so. Generally, the investigators should have respectively welcomed this request especially as this is a very serious matter that affects not only, the Complainant and his remaining 5.5 years of 100% positive impact 28-year Delta/Northwest career, but the safety of the flying public. Noting the gross misappropriation of facts in their findings, the OSHA investigation should have allowed the Complainant's in person guidance to the facts. The Complainant was denied by OSHA. On February 27, 2025, the OSHA investigator wrote "the additional Delta response to your complaint is anticipated by the end of this week (02/28/2025 or early next week in March) OSHA will not be meeting with you because he believes you have been provided with ample opportunity to provide whatever documents, etc. that you have for this investigation."

*The Complainant's last and updated declaration, labelled 2nd Amended Declaration (the same declaration Delta defaulted to not respond), has the preponderance of evidence that he passed pilot training as he normally has throughout his 100% positive impact career, but that everything else Delta has claimed was illegally false and illegally retaliatory, including illegal termination bypassing legal collective bargaining due process PWA18E1 to do so.*
*Per relevancy of Ms. Petitt case vs Delta, the Respondent has a history of gross repeat back-to-back offender for which severe punitive damages are warranted.*

## 2. <u>Rules of Procedure Violation Omitted in Findings:</u>

The Complainant's July 7, 2024, updated 1st Amended Declaration and January 26, 2025, updated 2nd Amended Declaration were unjustly omitted in the findings. The January 26, 2025, updated 2nd Amended Declaration had all the facts supporting the Complainant's claim of whistleblower retaliation. The Respondent failed to file an any response **declaration to the**

Complainant's 1st Amended Declaration July 7, 2024, and 2nd Amended Declaration dated January 26, 2025. Delta is in suspicious default after being given an opportunity to show cause why it should not be held in default. **OSHA unjustly failed to mention in their findings.**

3. **Respondent's Repeat offenses and continued exposure to threatening toxic culture against employees who speak up for safety and professional misconduct and pattern of ongoing safety issues:**

Delta has a very recent and disturbing history of relevant violations that shows the company continues to expose employees to a toxic culture to any employee who speaks up for safety/unhealthy unprofessionalism violations. The Complainant specifically referenced the **relevance of same precise behaviors of Respondent in Petitt vs Delta Air Lines ARB CASE NO. 2022-0047, ALJ CASE NO. 2018-AIR-00041 case mere months before the Complainant's complaint. The Complainant specifically referenced his formal legal assistance to Ms. Petitt in her case against Delta. The very same counsel Delta hired to represent the company vs Ms. Petitt is the same counsel Delta is using vs the Complainant. The judge (Morris) in Ms. Petitt's case, a case the OSHA investigators confirmed they reviewed, stated**: "*it is improper for [Delta] to weaponize this process for the purposes of obtaining blind compliance by its pilots due to fear that [Delta] can ruin their career by such cavalier use of this tool of last resort." [Decision at 98].* **OSHA unjustly failed to mention in their findings. EXHIBIT A Ms. Petitt's Attorney, Lee Seeham, Summary Statement**

**Then Delta CEO and current Delta CEO is the same person. Attorney Seeham deposed the Delta CEO in February 27, 2019, public access, where the CEO stated under oath that he did not know what executive accountability means https://www.youtube.com/watch?v=pa5wer0KKY4.  Corporation demeanors and executions flow from the top.**

4. **Findings Not in Accordance with Law**:

It is illegal for an employer to retaliate against an employee who exercises their right to file a safety or health complaint with OSHA, raise a health and safety concern with their manager or employer, participate in an OSHA inspection, or report a work-related injury or illness. These rights are guaranteed under **section 11(c) of the Occupational Safety and Health Act of 1970 (OSH Act)**. The Complainant communicated about safety and health/professionalism matters to management personnel. The Complainant filed a safety/health complaint with OSHA. An employer may not take an "adverse action" against an employee because the employee exercised a right under the OSH Act. Relevant Adverse actions include Firing, Disciplining, denying benefits, Intimidation, threats, or harassment, reducing pay or hours, more subtle actions, such as isolating, ostracizing, mocking, or falsely accusing the employee of poor performance. Interfering with future employment. All complaints are investigated according to requirements in

**29 CFR Part 1977.** OSHA's Whistleblower Protection Program enforces the whistleblower provisions of more than twenty federal whistleblower laws. The Department has enforcement authority to seek relief to make the employee whole, including: Getting their job back pay with interest, Payment for expenses that resulted from the retaliation with interest, and for emotional distress, Punitive damages, non-monetary relief. As the Respondent has a history of abuse; their management system and imminent oversight is relevant. The Complainant's FAA forced retirement date is currently April 24, 2029, and may likely extend to April 24, 2031, and beyond as the FAA continues to review extending forced retirement age.

## 5. <u>OSHA's whistleblower protection program safeguards employees from retaliation for reporting safety and health violations. The Complainant made 5x protected retaliatory reports</u>

Retaliation occurs when an employer (through a manager, supervisor, or administrator) fires an employee or takes any other type of adverse action against an employee for engaging in protected activity. An adverse action is an action which would dissuade a reasonable employee from raising a concern about a possible violation or engaging in other related protected activity. Retaliation can have a negative impact on overall employee morale.

To be protected, an employee must have a reasonable belief that a violation has occurred or is likely to occur, and the employer must take an adverse action against the employee because of that report. **The Complainant had reported 5 x safety and health violations to his employer from June 2022 through February 2024 and all documented with his OSHA declarations. 1-** June 2022, he reported mental health accusations by his supervisor to Respondent's human resources department and was noted by same employee (VP of Flight Operations Brian Pickett; same person who illegally fired Complainant October 31, 2024). 2- July 2022, he supported Ms. Petitts's in her **Petitt vs Delta Air Lines ARB CASE NO. 2022-0047, ALJ CASE NO. 2018AIR-00041 case** relevant to the June 2022 incident. 3- February 2023, he reported unsafe and unprofessional check pilot activity during his captain operational experience to the FAA and forwarded to training manager. 4- In October 2023, he reported unsafe, unprofessional and illegal AQP training to a training manager. 5- In February 2024, he reported unsafe, unprofessional and illegal AQP training to his supervisor at his base. **<u>OSHA unjustly failed to protect and mention protection in their findings.</u>**

## 6. <u>Complainant Indisputably PASSED training by actions of his AQP Normal Qualification Curriculum and FAR 121.434cii check pilot action, every other action by Respondent is retaliatory</u>

The Complainant has been a commercial pilot since 1991. He has been employed by Northwest Airlines and merged to Delta Air Lines since 1997. He has a 100% positive company impact record, training record, medical record, FAA record and employee peer record. Per the Complainant's training record and check pilot action (reference **FAR 121.434cii**), he again passed training on December 4, 2024. In full consideration of the Complainant's Amended

Declarations and preponderance of submitted evidence, the Respondent has defiantly illegally retaliated against the Complainant. They did so, taking full unprofessional slight and. advantage that there is no oversight of the training curriculum, and that the Complainant's Union is complicit to management's directive. **OSHA unjustly failed to protect and mention protection in their findings.**

## 7. Respondent chose to illegally retaliate against Complainant in reference to OSH Act 11c and Whistleblower protection act.

The Respondent has made false claims the Complainant has failed 2 required training curriculums by mere words and manipulated records. The Complainant has filed declarations that he passed training curriculum by actions in his training record and actions of check pilot during international flag operations per **FAR 121.434cii** where check pilot was not present on flight deck for 2 hours with full acknowledgment and approval the Complainant was acting as pilot in command at flight control seat. This occurred after the Respondent labelled the Complainant unqualified, meaning the Complainant was required to requalify himself. The Complainant deserved to be back on duty during 1.5 months of illegal harassment on December 4, 2023. Submitted Declaration records and evidence prove the Respondent illegally violated AQP protocol by omitting required reference material, rushing ineffective training environments, using illegal unprofessional demeanors and insults, setting up illegal and unprofessional technique standards during training, failing to provide simulator training between two evaluations, failing to submit evaluations within 12 hours, abusing Complainant to require more training when he legitimately passed training per record and FAR 121.434cii action, deceitfully dishonest in one way written evaluations by instructor to training department that the FAA had emphasized to be collaborated with trainee and other instructors for trustworthiness and effectiveness.

**§ FAR 121.414** Initial, transition and recurrent training and checking requirements: Flight instructors: This section emphasizes that instructors must be qualified to properly evaluate student performance and identify areas of deficiency. It also specifies training in methods and procedures for conducting flight instruction, which implicitly includes the responsibility of providing effective feedback. Effective instruction and effective feedback was vacant during the Respondent's false allegation claims, making them illegal.

**Feedback is a core part of the learning process:** Instructors should consistently provide feedback on pilot performance, both during and after training sessions. This feedback should be specific, constructive, and based on factual observations. Did not occur with Delta's false accusations.

**Trustworthy feedback builds confidence and respect:** Instructors should be honest and transparent in their evaluations, fostering a relationship of trust between instructor and pilot. This trust is essential for pilots to accept feedback and use it to improve their flying skills. Did not occur with Delta's false accusations.

The Complaint emphasized this critical matter to OSHA that he passed training and any other claim by Respondent was deceptive, malicious and manipulative in his 2nd Amended Declaration

dated January 26, 2025. The Respondent chose to default and not answer. **OSHA unjustly failed to mention in their findings.**

8. **The Respondent needed the reliance of the Complainant to both Respondent and Union in order to violate collective bargaining agreement due processes (PWA 18E1) and thus to illegally terminate him October 31, 2024.**

All documented in the Complainant's 2nd Amended Declaration dated January 26, 2025, that the Respondent defaulted with no response declaration. The Respondent, in their continued retaliatory actions against the Complainant, violated collective bargaining agreement **PWA 18E1** with the complicity of the Complainant's Union. We all rely on authority to comply legally and appropriately, and if they do not, justified challenging illegal activity is warranted in civil action. **PWA 18E1** falls under relevant discipline and discharge grievance section. The specific section states, "A pilot will be furnished copies of all items placed in their file pertaining to them that maybe of a critical nature. They will begin the opportunity to acknowledge receipt and make a responsive statement. Such a responsive statement will be placed in the pilot's personnel file. A pilot may also file a grievance challenging any such item in their file. Items within their file that a pilot is not given the opportunity to acknowledge may not be used in an investigation for discipline and discharge. Yet this NEVER occurred and legally voids every retaliatory action by the Respondent.

On October 31, 2024, the Complainant discovered **PWA 18E1**. He challenged his Union they did not comply with due process. The Union was mum. The Complainant challenged his supervisor, Jeff Handel, the same person calling him to advise the Respondent was terminating him. Upon direct reference to **PWA 18E1**, Mr. Handel responded the company was not acting with malice and that anything could be undone. He then responded that nothing was in the Complainant's personnel file except his termination letter. Zero Oversight and blatant illegal disregard to collective bargaining agreement due process was violated. The authentic dots of full evidentiary support for the Complainant are fully aligned. An overseer and investigator must authentically ask themselves, why would Respondent knowingly and willingly and whole heartedly violate CBA due process to terminate the Complainant, especially if their claims were legitimate in their false makeup? **OSHA unjustly failed to mention in their findings.**

9. **Respondent made repeated knowingly criminal false statements to the Occupational Safety and Health Administration (OSHA), creating their own serious consequences, leading to both criminal and civil penalties.**

The Respondent did so in their July 11, 2024, response declaration. Suspiciously the Respondent defaulted with no response declaration to the Complainant's 1st and 2nd Amended Declarations where the Complainant highlighted the Respondent's criminal activities and continual illegal

retaliatory activities towards the Complainant. The Occupational Safety and Health Act (OSH Act) specifically outlines penalties for knowingly making false statements to OSHA. This includes statements made in complaints, applications, records, reports, plans, or any other document filed or required to be maintained under the Act. OSHA may refer cases involving suspected false statements to the U.S. Department of Justice for potential criminal prosecution. The repeated nature and context of the false statements, other federal criminal statutes, such as **18 U.S.C. § 1001**, are also applicable, carrying potentially more severe penalties. Employers and their counsel are also subject to penalties for making false statements or providing false documentation to OSHA, including in records related to workplace safety and health. Making false statements to OSHA is a serious offense that can result in significant fines and imprisonment. It is crucial for both employees and employers to ensure that all information provided to OSHA is truthful and accurate. If you are unsure about any information or documentation required by OSHA, it is best to seek clarification or legal counsel rather than risk making a false statement. The Respondent did so anyway throughout their July 11, 2024, response declaration where they made knowingly deceitful statements the Complainant did not pass training when he clearly did and all with a preponderance of evidence. The Respondent defaulted in not responding to the Complainant's July 7, 2024, and January 26, 2025, updated Amended Declarations where the Complainant additionally referred to criminal penalty(s) to the Respondent for making false statements. **OSHA unjustly failed to mention in their findings.**

## 10. Complaints were NOT investigated according to requirements in 29 CFR Part 1977.

**§ 1977.5 Persons protected by section 11(c).**

11. (a) All employees are afforded the full protection of section 11(c). For purposes of the Act, an employee is defined as "an employee of an employer who is employed in a business of his employer which affects commerce." The Act does not define the term "employ." However, the broad remedial nature of this legislation demonstrates a clear congressional intent that the existence of an employment relationship, for purposes of section 11(c), is to be based upon economic realities rather than upon common law doctrines and concepts. See, *U.S.* v. *Silk,* 331 U.S. 704 (1947); *Rutherford Food Corporation* v. *McComb,* 331 U.S. 722 (1947).

12. (b) For purposes of section 11(c), even an applicant for employment could be considered an employee. See, *NLRB* v. *Lamar Creamery,* 246 F. 2d 8 (5th Cir., 1957). Further, because section 11(c) speaks in terms of any employee, it is also clear that the employee need not be an employee of the discriminator. The principal consideration would be whether the person alleging discrimination was an "employee" at the time of engaging in protected activity.

13. (c) In view of the definitions of "employer" and "employee" contained in the Act, employees of a State or political subdivision thereof would not ordinarily be within the contemplated coverage of section 11(c). **§ 1977.6 Unprotected activities distinguished.**

To establish a violation of section 11(c), the employee's engagement in protected activity need not be the sole or primary consideration behind discharge or other adverse action. If the discharge or other adverse action would not have taken place "but for" engagement in protected activity, section 11(c) has been violated. See *Bostock* v. *Clay County, Ga.,* 140 S Ct. 1731, 1739 (2020); *Univ. of Tex. Sw. Med. Ctr.* v. *Nassar,* 570 U.S. 338 (2013). Ultimately, the issue as to whether a discharge or other adverse action was because of protected activity will have to be determined on the basis of the facts in the particular case.

### § 1977.9 Complaints under or related to the Act.

Discharge of, or discrimination against, an employee because the employee has filed "any complaint * * * under or related to this Act * * *" is prohibited by section 11(c). An example of a complaint made "under" the Act would be an employee request for inspection pursuant to section 8(f). However, this would not be the only type of complaint protected by section 11(c). The range of complaints "related to" the Act is commensurate with the broad remedial purposes of this legislation and the sweeping scope of its application, which entails the full extent of the commerce power. (See Cong. Rec., vol. 116 p. P. 42206 Dec. 17, 1970).

### § 1977.10    Proceedings under or related to the Act.

(a)    Discharge of, or discrimination against, any employee because the employee has "instituted or caused to be instituted any proceeding under or related to this Act" is also prohibited by section 11(c). Examples of proceedings which could arise specifically under the Act would be inspections of worksites under section 8 of the Act, employee contest of abatement date under section 10(c) of the Act, employee initiation of proceedings for promulgation of an occupational safety and health standard under section 6(b) of the Act and part 1911 of this chapter, employee application for modification of revocation of a variance under section 6(d) of the Act and part 1905 of this chapter, employee judicial challenge to a standard under section 6(f) of the Act and employee appeal of an Occupational Safety and Health Review Commission order under section
11(a) of the Act. In determining whether a "proceeding" is "related to" the Act, the considerations discussed in § 1977.9 would also be applicable.

(b)    An employee need not himself directly institute the proceedings. It is sufficient if he sets into motion activities of others which result in proceedings under or related to the Act.

### § 1977.11 Testimony.

Discharge of, or discrimination against, any employee because the employee "has testified or is about to testify" in proceedings under or related to the Act is also prohibited by section 11(c). This protection would of course not be limited to testimony in proceedings instituted or caused to be instituted by the employee, but would extend to any statements given in the course of judicial, quasi-judicial, and administrative proceedings, including inspections, investigations, and administrative rule making or adjudicative functions. If the employee is giving or is about to give

testimony in any proceeding under or related to the Act, he would be protected against discrimination resulting from such testimony.

## § 1977.16 Notification of Secretary of Labor's determination.

Section 11(c)(3) provides that the Secretary is to notify a complainant within 90 days of the complaint of his determination whether prohibited discrimination has occurred. This 90-day provision is considered directory in nature. While every effort will be made to notify complainants of the Secretary's determination within 90 days, there may be instances when it is not possible to meet the directory period set forth in section 11(c)(3).

The Complainant appreciates the opportunity to expand his declarations from May 21, 2024, through January 26, 2025, as the Respondent's retaliatory adverse actions expanded from false allegations to termination. Under all times OSHA acknowledged receipt of the Complainant's relevant updates, even where the OSHA investigator demanded she be able to challenge the Respondent's action just prior to terminating the Complainant.

As noted above, the findings of the initial investigation were deemed to be inaccurate and woefully unsubstantiated with no mention of the Complainant's 1st and 2nd Amended Declarations (and the Respondent's default response to each) and inconsistent with the relevant whistleblower statutes and legal precedents, a re-review was timely requested and **OSHA Chief Robert Swick agreed critical due process per OSH Act 11c was overlooked.** What if the Complainant was not the oversight? On May 5, 2025, OSHA made a new updated finding, yet never mentioned the Administration made a critical due process error in omitting findings under OSH Act 11c.

The Complainant is justifiably deeply concerned that the OSHA investigators yet again based its findings on incomplete and or false evidence in their updated May 5, 2025 findings. The Secretary Findings state "The complaint was timely filed. Complainant claims he received a letter of Investigation & Removal of Service on May 17, 2024. On June 11, 2024, Complainant amended his complaint alleging a violation of the Act (OSH Act 11c) within the 30-day statute period." The investigators misapplied reliant facts. The Complainant filed his declarations to his limited May 21, 2024, Complaint (per actual OSHA complaint form) on June 11, 2024. (This was not an amended complaint it was the original declaration.)

The Complainant filed a 1st Amended Complaint (with further relevant supportive evidence) on July 7, 2024 (never mentioned by OSHA investigators in either March 13, 2025, or May 5, 2025, findings). The Complainant filed a 2nd Amended Complaint (with further relevant supported evidence, including termination) on January 26, 2025 (never mentioned by OSHA investigators in either March 13, 2025, or May 5, 2025, findings). Between the two amended complaint filings, the Complainant was in continuous written contact with the OSHA investigators with confirmed receipt of critical evidence that apparently was irresponsibly and negligently never considered. Delta never responded to either the Complainant's 1st or 2nd Amended declarations, especially suspicious when the Complainant highlighted OSHA enforcement to refer Delta's false statements made in their July 11, 2024, only response to the Department of Justice for criminal prosecution review.

On February 26, 2025, the Complainant advised investigators he requested to personally meet with them with his right to do so. Investigators should have respectively welcomed this request especially as this is a very serious matter that affects not only, the Complainant and his remaining 5.5 years of 100% positive impact 28-year Delta/Northwest career, but the safety of the flying public. The Complainant was denied by OSHA. On February 27, 2025, the OSHA investigator wrote "the additional Delta response to your complaint is anticipated by the end of this week (02/28/2025 or early next week in March) OSHA will not be meeting with you because he believes you have been provided with ample opportunity to provide whatever documents, etc. that you have for this investigation."

## Standard Governing OSHA Whistleblower Investigations

In spring 2015, OSHA issued a memo clarifying the investigative standard for OSHA whistleblower investigations. OSHA enforces more than twenty whistleblower protection laws, investigating reprisal complaints and issuing merit findings where there is reasonable cause to believe that retaliation has occurred. Under most of these laws, a merit finding typically includes a preliminary order of relief to make the employee whole. Such relief can include reinstatement, lost wages, compensatory damages, and attorney's fees. Some statutes also provide for punitive damages.

The memo's essential message was that "the reasonable cause standard is somewhat lower than the preponderance of the evidence standard that applies following a hearing," and that OSHA can issue a merit finding where an investigation reveals that the complainant *could* succeed in proving a violation.

## Definition of "Reasonable Cause" Standard in Whistleblower Investigations

**clarification of the "reasonable cause" standard:**

"The threshold OSHA must meet to find reasonable cause that a complaint has merit requires evidence in support of each element of a violation and consideration of the evidence provided by both sides during the investigation but does not generally require as much evidence as would be required at trial. Thus, after evaluating all the evidence provided by the employer and the complainant, OSHA must believe that a reasonable judge could rule in favor of the complainant."

"OSHA's investigation must reach an objective conclusion – after consideration of the relevant law and facts – that a reasonable judge could believe a violation occurred. The evidence does not need to establish conclusively that a violation *did* occur."

"OSHA's responsibility to determine whether there is reasonable cause to believe a violation occurred is greater than the complainant's initial burden to demonstrate a prima facie allegation that is enough to trigger the investigation."

"Although OSHA will need to make some credibility determinations to evaluate whether a reasonable judge could find in the complainant's favor, OSHA does not necessarily need to resolve all possible conflicts in the evidence or make conclusive credibility determinations to find reasonable cause to believe that a violation occurred."

OSHA's clarification of the reasonable cause standard is consistent with the ARB's precedent. And though the memo does not alter the law, it may increase the number of merit findings because investigators will understand that they need not obtain "smoking gun" evidence of retaliation to issue a merit finding.

## 11. OSHA Whistleblower enforcement

Successful whistleblowers are entitled to financial relief, include reinstatement, compensatory damages for back pay, and attorney's fees. Some statutes also provide for punitive damages, if OSHA successfully demonstrates that an employer retaliated against them. This is to compensate for the harm caused by the employer's retaliatory actions.

The Complainant has met the threshold for OSHA to issue a merit finding and to make relevant enforcement action against the Respondent. As the Respondent has been a repeat offender of the very same whistleblower protection program, fairness to reinstate without an opportunity to further retaliate is paramount. Also, as the Respondent has been a repeat offender, substantive compensatory and punitive damages award so high as to vehemently deter the Respondent from behaving this way ever again is warranted.

Compensatory damages are monetary awards intended to compensate an injured party for actual losses incurred due to another party's negligence or wrongdoing. They aim to restore the injured party to their previous position by covering quantifiable financial losses like lost wages, lost benefits, lost career and non-monetary losses like pain and suffering, especially for repeat offenders.

Punitive damages, also known as exemplary damages, are monetary awards given in addition to compensatory damages to punish a defendant for egregious misconduct and deter similar behavior in the future. They are not intended to compensate the plaintiff for their losses but to punish the defendant for actions deemed malicious, reckless, or intentionally harmful. Especially for repeat offenders.

This matter is particularly critical to public safety, as retaliation against pilots speaking up for safety and professional safety environments is critical to the world's aviation transportation system.

In example, arbitrators deciding cases under the auspices of the Society of Maritime Arbitrators have awarded punitive damages in actions involving transnational contracting parties.8 In *The Loewen Group, Inc. and Raymond L. Loewen v. United States of America*, an arbitral panel is to decide whether Mississippi court proceedings that resulted in awards of $100 million in compensatory damages and $400 million in punitive damages violated Chapter 11 of the North American Free Trade Agreement. What is aviation safety worth especially with an abundance of new hires lacking past experiences and more effective training?

## CONCLUSION

Respectively, OSHA has a renewed opportunity in reviewing (in full detail) the legitimate presented facts, and that the Agency will fully endorse the Complainant's merited claims to make him whole plus deserved extreme compensatory and punitive damages (deserved as the Respondent has history as repeat back-to-back toxic offenders with the same CEO and counsel as during Ms. Petitt's offense). The Complainant legitimately asks how he can be reinstated when the Respondent has made such Respondent toxic statements as page 10 Respondent's only response declaration states, "at this point, it was indisputable that Captain Farley would never fly for Delta again…" However, equal value to his ruined career is warranted, as is his relevant expunged record.

OSHA has the enforcement authority to hold the Respondent fully accountable. This is an opportunity for OSHA to rectify gross investigation errors and grossly overlooked evidence and grossly mishandled due process.

The matter is NOT of fraudulent training failure claimed by Respondent, rather the claim is of indisputable illegal OSHA Whistleblower retaliatory adverse actions by the Respondent directly against the Complainant for his speaking up against lacking effective and professional safety training execution and fraudulent AND illegal CBA due process execution by Respondent. There is high likelihood that his support for Ms. Pettitt during her open case is also retaliatory especially considering the timing of the two cases.

The evidence speaks for itself. Patterns do not lie. Delta has acted with toxic culture towards Ms. Petitt and now the Complainant. The Respondent chose to default no response declarations to the Complainant's Amended declarations dated July 7, 2024, and January 26, 2025. This is especially suspicious for two reasons. The Respondent had every opportunity to challenge the Complainant highlighted facts that he did indeed pass his required training, and the Respondent was alerted that the Complainant compelled OSHA to refer relevant criminal charges against the Respondent to the DOJ for their willful false statements to the Agency.

The Complainant requests in person meeting with investigators.

The Complainant and the public's safety is relying on OSHA's merited execution in the Complainant's full favor. The agency already agreed it made a mistake in its findings. The opportunity to apply deserved severe enforcement against the Respondent is now.

With Diligence,
/S/ Edward Farley, Pro-Se
May 20, 2025

Yahoo Mail - RE: Delta Air Lines, Inc./Farley/301036234 Objection to the findings and March 13, 2025 decision    Case 1:26-cv-00086-SE-TSM    Document 1-2    Filed 02/04/26    Page 16 of 64

6/30/25, 1:30 PM

## RE: Delta Air Lines, Inc./Farley/301036234 Objection to the findings and March 13, 2025 decision

From: Swick, Robert - OSHA (swick.robert@dol.gov)

To: e.farley@yahoo.com

Date: Thursday, May 1, 2025 at 03:52 PM EDT

Good afternoon Mr. Farley,

I have been in touch with the New York City office about your case.   We agree that the office should have also docketed your case under Section 11(c) as you requested.   Consequently, the New York City office will be issuing you findings under Section 11(c) in the coming days.  Please send your request for review to  RFR@dol.gov within 15 days of receiving the findings.

Sincerely,

**Rob Swick**

Chief, Division of Field Operations
OSHA/DWPP
U.S. Department of Labor



**OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION**
UNITED STATES DEPARTMENT OF LABOR

**From:** ed farley <e.farley@yahoo.com>
**Sent:** Monday, April 21, 2025 12:32 PM
**To:** OSHA.DWPP <OSHA.DWPP@dol.gov>
**Subject:** Re: Delta Air Lines, Inc./Farley/301036234 Objection to the findings and March 13, 2025 decision

You don't often get email from e.farley@yahoo.com. Learn why this is important

CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the

**U.S. DEPARTMENT OF LABOR**

Occupational Safety and Health Administration
New York Regional Office
201 Varick Street, Room 670
New York, NY 10014



March 13, 2025

Ed Farley
472 Wallis Road,
Rye, NH 03870

Via Email: e.farley@yahoo.com

RE: Delta Airline, Inc./Farley/301036234

Dear Ed Farley:

This is to advise you that we have completed our investigation of the above-referenced complaint filed by you ("Complainant") against Delta Airlines, Inc., ("Respondent"), on May 21, 2024 under the employee protection provisions of Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR21") (2000) [49 U.S.C. § 42121].

Following an investigation of this matter by a duly authorized investigator, the Acting Secretary of Labor, acting through her agent, the Regional Administrator for the Occupational Safety and Health Administration ("OSHA"), New York Region, finds there is no reasonable cause to believe Respondent violated AIR21, and issues the following findings:

### Secretary's Findings

The complaint was timely filed. Complainant claims Respondent terminated his employment on May 20, 2024. On May 21, 2024, Complainant filed a complaint alleging a violation of AIR21, within the 90-day statutory filing period.

Complainant and Respondent are covered by AIR21.

Complainant alleges that contrary to Respondent's assertion, he passed his required pilot training. Rather Complainant alleges that Respondent retaliated against him by terminating his employment after he provided a witness statement in a case against Respondent and made complaints to the FAA and to Respondent about a flight instructor's safety violations, and an incident involving potentially unlawful and unethical behavior by a line check pilot.

Respondent alleges that declared complainant unfit to fly on May 20, 2024, because Complainant failed his continuing qualification training, which then automatically enrolled him in Respondent's normal requalification curriculum. The normal requalification curriculum consists both of training on Respondent's flight simulator and supplemental operating experiences, including a "line check" flight with multiple legs (where a line check pilot would evaluate his performance). In late 2023, after numerous attempts, Complainant failed to successfully complete his line check, leaving Respondent no

Delta Airlines, Inc./Farley/301036234

Page 2 of 3

choice but to declare Complainant unfit to fly. Respondent asserts that where an airline takes an employment action to protect the flying public it is not retaliatory.

The evidence gathered in the investigation shows that Complainant's submission of a witness statement in a case against Respondent and his complaints to the FAA and to Respondent relating to a flight instructor's safety violations and potentially unethical behavior by a Line Check pilot did not contribute to Complainant's termination.

Therefore, OSHA does not have reasonable cause to believe that a violation of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century (AIR21) 49 U.S.C. § 42121; 29 C.F.R. Part 1979. occurred. Consequently, this complaint is dismissed.

Consequently, this complaint is dismissed.

Respondent and Complainant have 30 days from the receipt of these Findings to file objections and request a hearing before an Administrative Law Judge ("ALJ"). If no objections are filed, these Findings will become final and not subject to court review. Objections must be filed in writing with:

**Primary method** - via email to: OALJ-Filings@dol.gov

Secondary method (if unable to file via email) - via hard copy submission to:

> Chief Administrative Law Judge
> U.S. Department of Labor
> 200 Constitution Ave NW, Room S-4325
> Washington, DC 20210
> (202) 693-7500, Facsimile (202) 693-7365

With copies to:
> Lincoln O. Bisbee
> Partner
> Morgan, Lewis & Bockius LLP
> 101 Park Avenue
> New York, NY 10178-0060
> Email: lincoln.bisbee@morganlewis.com

And

> U.S. Department of Labor-OSHA
> 201 Varick Street Room 670
> New York, NY 10014
> (212) 337-2368
> Email: osha-wb-reg-2@dol.gov

In addition, please be advised that the U.S. Department of Labor does not represent any party in the hearing; rather, each party presents his or her own case. The hearing is an adversarial proceeding before an ALJ, in which the parties are allowed an opportunity to present their evidence for the record. The ALJ who conducts the hearing will issue a decision based on the evidence, arguments, and testimony presented by the parties. Review of the ALJ's decision may be sought from the Administrative Review

Delta Airlines, Inc./Farley/301036234

**Page 3 of 3**

Board, to which the Secretary of Labor has delegated responsibility for issuing final agency decisions under AIR21. A copy of this letter has been sent to the Chief Administrative Law Judge along with a copy of your complaint. The rules and procedures for the handling of AIR21 cases can be found in Title 29, Code of Federal Regulations Part 1979, a copy of which was sent to you earlier, and may be obtained at whistleblowers.gov.

Sincerely,

John P. Murphy
Acting Assistant Regional Administrator

cc:     FAA
        U.S. DOL-Chief Administrative Law Judge
        Lincoln O. Bisbee, Esq.  Email: lincoln.bisbee@morganlewis.com

**U.S. DEPARTMENT OF LABOR**                Occupational Safety and Health Administration
                                            New York Regional Office
                                            201 Varick Street, Room 670
                                            New York, NY 10014



May 5, 2025

Ed Farley
472 Wallis Road,
Rye, NH 03870

Via email: e.farley@yahoo.com

RE: Delta Airline, Inc./Farley/301036234

Dear Mr. Farley:

This is to advise you that we have received your complaint and completed our investigation of the above-referenced complaint filed by you ("Complainant") against Delta Air Lines, Inc., ("Respondent"), under the employee protection provisions of Section 11(c) of the Occupational Safety and Health Act ("the Act"), 29 U.S.C. § 660(c).

Following an investigation of this matter by a duly authorized investigator, the Acting Secretary of Labor, acting through her agent, the Regional Administrator for the Occupational Safety and Health Administration, New York Region, finds there is no reasonable cause to believe Respondent violated the Act, and issues the following findings:

### Secretary's Findings

The complaint was timely filed. Complainant claims he received a letter of Investigation & Removal from Service on May 17, 2024. On June 11, 2024, Complainant amended his complaint alleging a violation of the Act, within the 30-day statutory filing period.

Complainant and Respondent are covered by the Act.

The written amendment to the complaint was submitted by Complainant's attorney dated June 11, 2024, and signed by the attorney. The written complaint claims the retaliation Complainant suffered fell under the Act. In section VI, paragraph 52, the written complaint states Respondent violated the Act and commenced to discharge the Complainant because he testified and was about to testify in a proceeding related to health and safety issues in the workplace under 29 U.S.C. §660(c)(1). The section points specifically to Exhibit A, B and D, that are part of the written complaint (Exhibit 5). A review of the written complaints internal exhibits A, B, and D, show that all information presented falls entirely under 49 U.S.C. §42121 (a) (1), as the information Complainant provided or was to provide was entirely related to aviation safety. Exhibit A specifically referred to aircraft pilot training. Exhibit B specifically referred to training guidance, trainers, and techniques related to aircraft pilot training. Exhibit D specifically referred to feedback, requests and suggestions of 7ER training, which is a specific aviation training program. There is no coverage under the Act for these issues.

Delta Airline, Inc./Farley/301036234

There is no reasonable cause to believe Respondent violated the Act.

Consequently, this complaint is dismissed.

This case will be closed unless Complainant files a request for review by sending a letter to:

> Director
> Directorate of Whistleblower Protection Programs
> U.S. Department of Labor – OSHA
> 200 Constitution Avenue, N.W., Room N-4618
> Washington, D.C. 20210
> Email: RFR@dol.gov

With a copy to:

> U.S. Department of Labor-OSHA
> 201 Varick Street Room 670
> New York, NY 10014
> (212) 337-2368
> Email: osha-wb-reg-2@dol.gov

A Complainant has 15 calendar days after receiving these findings to request a review of the decision to dismiss from the Directorate of Whistleblower Protection Programs ("DWPP"). Otherwise, this case will be closed. If a review is requested, DWPP will review the case file to ascertain whether the investigation dealt adequately with all factual issues and whether the investigation was conducted fairly and in accordance with applicable laws. The outcome will be either to return the case to the investigator for further investigation or to affirm the decision to dismiss, after which the case is closed.

Sincerely,

John P. Murphy
Regional Supervisory Investigator

cc:   Lincoln O. Bisbee, Esq. Email: lincoln.bisbee@morganlewis.com
      File

Delta Airline, Inc./Farley/301036234

**U.S. Department of Labor**    Occupational Safety and Health Administration
Washington, D.C. 20210



June 26, 2025

Edward Farley
472 Wallis Road
Rye, NH 03870
e.farley@yahoo.com

Re: Delta Airlines, Inc. / Farley / 301036234

Dear Edward Farley:

This letter is in response to your May 20, 2025, request for review (RFR) of the decision to dismiss your complaint against Delta Airlines (Respondent).

The investigative records reflect that you filed your initial complaint against Respondent on May 21, 2024, and amended it on June 11, 2024, alleging that Respondent found you unfit to fly and then terminated your employment in retaliation for engaging in Section 11(c) protected activity. The New York Regional Office investigated and determined that you did not engage in workplace safety or health protected activities. Consequently, it dismissed your Section 11(c) complaint on May 5, 2025.

The Directorate of Whistleblower Protection Programs completed a review of the investigative case file and determined that your complaint was properly dismissed for a lack of protected activity under Section 11(c).

Please note that this is the final determination of the Secretary of Labor; your case is now closed.

Sincerely,

*Stacy McGuire*

Stacy McGuire, Acting Director
Directorate of Whistleblower Protection Programs

cc:    Regional Office
       Respondent

**Exhibit 2: January 22, 2026, Emergency Motion/order to the assigned ALJ, formally identifying the incomplete administrative record.**

UNITED STATES DEPARTMENT OF LABOR

OFFICE OF ADMINISTRATIVE LAW JUDGES

BOSTON, MASSACHUSETTS


In the Matter of:

Edward Farley, Complainant,

v.

Delta Air Lines, Inc., Respondent.


OALJ No.: 2025-AIR-00023


**EMERGENCY MOTION TO RECONSIDER, CORRECT A CORRUPTED RECORD, FIND FRAUD UPON THE TRIBUNAL, STAY ALL PROCEEDINGS, AND REASSIGN PRESIDING ALJ**


Complainant Edward Farley, proceeding pro se, respectfully moves for reconsideration of the Tribunal's January 16, 2026, Omnibus Order and seeks immediate emergency relief. This motion demonstrates that these proceedings are advancing on an unlawful, incomplete, and materially distorted administrative foundation that must be cured before any further action.


## I. INTRODUCTION — THESE PROCEEDINGS ARE ILLEGITIMATE UNTIL CURED


1. This case is advancing on a defective and corrupted administrative record that omits dispositive evidence proving that Mr. Farley successfully completed FAA-mandated training under **FAR 121.434(c)(i)–(ii)** and was thereafter subjected to retaliatory actions.

2. Despite three emergency motions and multiple supplements—each supported by exhibits already in the docket—the Tribunal has:

    a. Proceeded as if the OSHA record were complete and reliable when it is facially not; and

    b. Refused to engage with critical evidence demonstrating FAA compliance and retaliation; and

    c. Advanced discovery on an unlawful foundation; and

    d. Waived mandatory protections (including the 14-day deposition notice) over Complainant's objection.

3. These actions did not merely "manage" the case — they ratified a corrupted record and allowed Delta's narrative to become the default premise of adjudication.

4. Until the record is reconstructed, verified, and cleansed of these omissions, any further proceedings are unlawful.

## II. GOVERNING LAW — THE ALJ'S NON-DELEGABLE DUTIES

### A. De Novo Obligation Under AIR21

5. Under **49 U.S.C. § 42121(b) and 29 C.F.R. § 1979.107**, once a hearing is requested, the ALJ must conduct a de novo proceeding. This requires an independent evaluation of the complete evidentiary record, including:

- All complainant declarations and exhibits; and

- All employer submissions or defaults; and

- Materials relied upon by OSHA.

6. The ALJ is not bound by OSHA's findings and must ensure that the administrative record is accurate, complete, and reliable before merits discovery, depositions, or adjudication proceed.

7. Proceeding on a materially incomplete or manipulated record violates both AIR21 and the **Administrative Procedure Act ("APA"), 5 U.S.C. §§ 554, 556–557.**

8. Here, this **ALJ Tribunal** proceeded despite a record that omitted:

   - Mr. Farley's **OSHA** Second Amended Declaration, Jan. 26, 2025 (**Exhibit I**);

   - Normal Qualifications Record (**Exhibit F**) December 4, 2023, S Satisfactory passing (including Delta' evaluation abuse of Federal Aviation Regulation FAR 121.434 ci, cii AQP evaluation abuse omitting OE/TOE); and

   - Normal Qualifications "REQUAL" Record (**Exhibit H) that triggered FAR 121.434;** and

   - Delta's OSHA responses or defaults (**Exhibits J & K**).

**B. Prohibition on Ex Parte Communications**

9. Under **5 U.S.C. § 557(d)(1) and 29 C.F.R. Part 18**, ex parte communications regarding the merits are prohibited.

10. All substantive communications between the **ALJ, OALJ, OSHA, or Delta** must appear on the docket and be served on both parties.

11. Mr. Farley has raised credible concerns—supported by the record—that critical materials and communications were neither docketed nor disclosed, warranting immediate record reconstruction and an evidentiary pause.

**C. Application to This Case**

12. Despite these duties, the **ALJ:**

- Proceeded while the **OSHA** record was demonstrably incomplete;
- Declined to meaningfully consider three emergency motions filed Jan. 8, 14, and 16, 2026;
- Waived the 14-day deposition notice over objection; and
- Advanced discovery on a legally defective foundation.

13. This violates **AIR21's** de novo mandate and the **APA's** requirement that adjudication rest on the whole record, **5 U.S.C. § 706(2)(A).**

**D. Abuse of Discretion in Denying or Ignoring Supplementary Motions**

14. The **ALJ's refusal** to consider three timely-filed emergency and supplemental motions **(Jan. 8-16, 2026)** constitutes an abuse of discretion. **Under 5 U.S.C. § 555(b) and 29 C.F.R. § 18.27,** the Tribunal must provide parties the opportunity to present evidence and argument relevant to the merits before issuing dispositive rulings. Ignoring supplemental filings without reasoned explanation violates procedural fairness and the **ALJ's** gatekeeping duties.

15. Courts consistently hold that administrative law judges cannot ignore material submissions or summarily deny motions without evaluating the merits, as such conduct undermines the integrity of the proceedings.

- *Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 420 (1971)* — agency actions must be based on a consideration of relevant factors.
- *SEC v. Chenery Corp., 318 U.S. 80, 87–88 (1943)* — agencies must explain decisions on the record and cannot ignore critical evidence.
- *Castaneda v. INS, 23 F.3d 1576, 1580–81 (9th Cir. 1994)* — arbitrary refusal to consider evidence constitutes abuse of discretion and violates due process.

16. Here, the **ALJ's outright disregard** for motions containing critical **FAA/AQP** evidence, MV recurrent records, and FAA AQP Normal Qualifications documentation not only prejudices the complainant but also compounds the procedural defects created by the incomplete OSHA record. By failing to consider these motions, the **ALJ** acted beyond his lawful discretion and ratified Delta's manipulation of the administrative record.

17. Relief requested: An order acknowledging the **ALJ's abuse of discretion** and requiring immediate consideration of all previously submitted supplemental motions and exhibits, in addition to reconstruction of the record, is warranted under both **AIR21, the APA, and controlling case law on administrative discretion.**

18. Accordingly, the **ALJ's failure** to consider these supplemental motions constitutes an abuse of discretion under the Administrative Procedure Act because it reflects a decision 'without observance of procedure required by law' and is arbitrary and capricious within the meaning of **5 U.S.C. § 706(2)(A).** This independently requires reconsideration and a stay of proceedings.

## III. THE ALJ'S GATEKEEPING OBLIGATION — WHY THESE PROCEEDINGS SHOULD NEVER HAVE BEGUN

19. Mr. Farley does not contend that the ALJ has unilateral authority to "reopen" FAA, NMB, or OSHA processes. The point is more fundamental:

20. The ALJ had a threshold, non-delegable duty not to commence or advance AIR21 proceedings on a facially incomplete, tainted, and unreliable OSHA record — and to act as a credible liaison requiring that defect to be cured before proceeding.

### A. Precondition to Jurisdictional Legitimacy

21. Under **AIR21 and the APA, an ALJ** may conduct a de novo hearing only after a minimally lawful administrative foundation exists. That requires:

   a. A reasonably complete OSHA record transmitted to OALJ;

   b. Assurance that the record includes the complainant's material filings; and

   c. Confirmation that the ALJ actually reviewed those materials before issuing orders affecting substantive rights.

22. Here, none of these preconditions were satisfied. Proceeding without them constitutes ultra vires action.

**B. Required Actions the ALJ Failed to Take**

23. Before advancing discovery or waiving protections, the ALJ was required to:

   a.  Acknowledge the record defect on the docket; and

   b.  Require OALJ or OSHA to certify what was transmitted; and

   c.  Order production of the complete OSHA packet; and

   d.  Stay proceedings until the record could be reconciled.

24. Instead, the **ALJ ignored these duties** and advanced proceedings on a manifestly incomplete record, acting arbitrarily and contrary to the APA's requirement that adjudication rest on the whole record. See **5 U.S.C. § 706(2)(A)**.

## IV. CORRUPTED OSHA RECORD — SPECIFIC OMISSIONS

25. **OSHA's** June 26, 2025 closing letter (Exhibit B) omitted:

   - Mr. Farley's Second Amended Declaration (**Ex. I**);
   - Normal Qualifications December 4, 2023 ["S": satisfactory] Recurrent Record including Delta's omitted FAR 121.434 indisputable pass grade (**Ex. F**);
   - Normal Qualifications "REQUAL" Record, including December 4, 2023 ["S": satisfactory] Recurrent Record / including Delta's omitted FAR 121.434 indisputable pass grade (**Ex. H**);
   - Delta's only submission July 12, 2024/2x defaults (**Exhibits J & K**); and
   - Other filings flagged by Mr. Farley (**Exhibits F–I**).

26. **OSHA** therefore concluded "no protected activity" based on thin air, which the ALJ was required to correct in de novo review.

6

## V. SUPPRESSED FAA RECORDS PROVE COMPLIANCE AND RETALIATION

27. Mr. Farley successfully completed FAA-mandated training under **FAR 121.434(c)(i)–(ii) through LCP actions during OE/TOE on December 4, 2023.**

28. Exhibits already in the docket (**Ex. F–H, I**) show:

- MV Recurrent record reflects a fabricated/disputed redacted "failure"; and
- Normal Qualifications record stamped "REQUAL," proving Delta documented successful FAA training; and
- Normal Qualifications record reflects a fabricated/disputed redacted "failure".

29. Together, these establish:

- Mr. Farley met FAA Federal Aviation Regulation standards not in Delta's control; and
- Delta forced requalification despite AQP Recurrent Execution abuse and redacted records; and
- Records and omitted/suppressed factual evidence show Delta weaponized and c continues to weaponize distorted narratives to justify discipline/termination.

30. This is retaliation disguised as "qualification."

## VI. FRAUD ON MULTIPLE ADMINISTRATIVE PROCESSES

31. Delta bears a non-delegable duty that disputes affecting pilot qualifications, safety, and employment be adjudicated without manipulation of records or interference with independent processes.

32. Record demonstrates coordinated manipulation across at least four legal regimes:

    a. **FAA/AQP Compliance** — deliberate manipulated distortion of training outcomes;

    b. **RLA/PWA Arbitration** — deliberate manipulation of collective bargaining agreement execution and narrative inconsistent with its own records, depriving NMB of truthful evidence;

    c. **OSHA WBPP** — omission of critical filings (**Ex. I, F–H**);

    d. **OALJ/ALJ** Proceedings — allowing omissions to taint de novo hearing.

33. This pattern undermines due process, chills whistleblowing, and threatens aviation safety — exactly what AIR21 was enacted to prevent.

## VII. ALJ PROCEDURAL ABUSE

34. The following conduct by the **presiding ALJ** demonstrates procedural abuse warranting reconsideration, stay and reassignment.

35. The **ALJ's** conduct amounts to procedural abuse because he:

    a.  Proceeded on a facially defective administrative record; and

    b.  Refused to consider dispositive evidence already docketed (**Ex. I, F, H, J, K**); and

    c.  Allowed Delta's narrative to control the proceedings despite contrary documentary evidence; and

    d.  Waived mandatory protections, including the 14-day deposition notice, over Complainant's objection.

## VIII. RETALIATION AGAINST WHISTLEBLOWER AND PUBLIC SAFETY CONCERNS

36. The administrative record demonstrates that Delta's actions, coupled with the **ALJ's** failure to ensure completeness and transparency, have directly suppressed Mr. Farley's protected disclosures regarding **FAA/AQP** compliance and oversight

deficiencies. This suppression constitutes retaliation against a whistleblower in the following respects:

a. Suppression of Lawful Disclosures: Mr. Farley repeatedly submitted evidence showing FAA-mandated training compliance, MV recurrent records, and Normal Qualifications records, which were ignored or omitted from the **OSHA** record (**Ex. I and related exhibits**). By advancing proceedings without these submissions, the Tribunal has allowed Delta to control the narrative and prevent lawful reporting of regulatory noncompliance.

b. Violation of Whistleblower Protections: **The Whistleblower Protection Act (WPA) and Dodd-Frank Act** protect employees who disclose violations of law, gross mismanagement, or threats to public safety. Suppressing factual reports about **AQP** training, evaluation, records abuse, record manipulation, and improper supervisory practices constitutes prohibited retaliation, including adverse personnel actions and obstruction of protected reporting channels.

c. Public Safety Implications: The suppressed evidence implicates **FAA-endorsed AQP** execution compliance and supervisory oversight during OE/TOE evaluations. Allowing distorted or incomplete records to stand not only harms Mr. Farley's career but also undermines regulatory oversight and risks aviation safety — precisely the harm Congress sought to prevent under whistleblower and aviation statutes.

d. Required Tribunal Response: The **ALJ and OALJ** have a duty to ensure that proceedings do not perpetuate suppression of protected disclosures. By failing to correct the record, the Tribunal is complicit in allowing retaliation to continue, which mandates immediate recusal, stay of proceedings, and reconstruction of the administrative record before any further adjudication.

e. In short, Delta's coordinated record manipulation and the Tribunal's failure to verify completeness have effectively retaliated against a whistleblower and suppressed factual evidence critical to regulatory compliance and public safety. Immediate corrective action is required.

f. Recognition of Delta's fraud upon the **ALJ Tribunal** is critical to ensure whistleblower protections are upheld and that further proceedings are not tainted by retaliation or record manipulation.

g. These failures render the proceedings fundamentally unreliable and require an immediate stay and reassignment to prevent continuing retaliation through process.

## IX. REASSIGNMENT OF PRESIDING ALJ AND RECUSAL IS REQUIRED

37. Given:

- Acceptance of a corrupted record; and
- Refusal to engage with dispositive evidence; and
- Advancement of discovery on unlawful foundation; and
- Deviation from procedural safeguards; and

38. A reasonable observer would conclude impartial adjudication is no longer possible.

39. ALJ requirements and uncorrected OSHA records support/demand recusal or reassignment of the Presiding ALJ.

## X. PROTEST AND RESERVATION OF RIGHTS

40. This motion is independently reviewable because it alleges structural defects, fraud upon the Tribunal, and denial of fundamental procedural rights that cannot be cured after final judgment. Failure to grant a stay would cause irreparable harm not remediable upon appeal.

41. Allowing the defective proceeding to influence parallel NMB/PWA arbitration would constitute irreparable harm and structural unfairness that cannot be remedied after final judgment.

42. *If the Tribunal declines to correct the record and address structural defects— including incomplete OSHA record, suppressed FAA training evidence, and procedural irregularities—Mr. Farley will seek immediate federal relief under the APA and applicable whistleblower statutes.*

43. *This is not a waiver of any rights, remedies, or arguments. Mr. Farley preserves all claims and objections while placing the Tribunal on formal notice that continued proceedings on a defective record constitute ongoing and reviewable administrative error.*

44. *Complainant preserves the right to seek immediate relief in federal court under the Administrative Procedure Act should this Tribunal proceed on a defective record.*

45. *Because these threshold defects remain unresolved, Complainant now seeks the emergency relief set forth below.*

46. Recognize and enter findings that Delta Air Lines, Inc.'s coordinated submission, omission, and manipulation of evidence across **OSHA, OALJ/ALJ, FAA,** and **PWA/NMB** channels constitutes fraud upon the Tribunal and warrants referral to appropriate authorities.

## XI. REQUESTED EMERGENCY RELIEF (NO CONFERENCE)

Whereas Whistleblower Complainant Mr. Farley respectfully requests:

A. **Reverse** the January 16, 2026 Order respectively; and

B. **Declaration that ALL further AIR21 proceedings are stayed** because the Tribunal lacked a lawful record foundation; and

C. **An Immediate stay of all discovery** and depositions pending reconstruction and certification of the OSHA record: and

D. **An order prohibiting any reliance** on this proceeding in parallel **NMB/PWA** matters until the administrative record is fully reconstructed and verified: and

E. **Protection from Parallel NMB/PWA Use of This Proceeding:** the Tribunal shall enter an order prohibiting Delta Air Lines, Inc., its counsel, agents, or representatives from: Citing, submitting, or relying upon the January 16, 2026 Omnibus Order, any interim rulings, or any materials generated in this OALJ proceeding in any NMB, PWA, or related arbitration or grievance process; Characterizing this OALJ proceeding as favorable to Delta in any parallel forum; Using discovery, testimony, or filings from this proceeding to prejudice Complainant in NMB/PWA arbitration until the OSHA record is fully reconstructed, certified, and reviewed de novo by a reassigned ALJ; and Arguing that this proceeding constitutes a waiver, admission, or estoppel against Complainant in any labor, arbitration, or grievance forum. Rationale: Because this case is proceeding on a facially defective and incomplete administrative record, any reliance on it in parallel NMB/PWA proceedings would cause irreparable prejudice, taint arbitral fact-finding, and reward record manipulation. Protection is

therefore necessary to preserve the integrity of both forums and to prevent collateral retaliation against the Complainant.

**F. Order OSHA to produce** the complete packet transmitted to OALJ, including a transmission of index and log identifying all material sent and omitted; and

**G. Written certification, on the record, that OALJ and presiding ALJ personally reviewed the complete OSHA packet prior to issuing any substantive conference and or orders; and**

**H. OALJ to reconstruct and verify** the complete administrative record, including all exhibits and filings identified by Complainant Edward Farley, and to refer any materially false statement to the appropriate authorities; and

**I. Recognize and enter findings that Delta Air Lines, Inc.'s** coordinated submission, omission, and manipulation of evidence across OSHA, OALJ/ALJ, FAA, and PWA/NMB channels constitutes fraud upon the Tribunal and warrants referral to appropriate authorities; and

**J. Reassignment of the case** to a new **ALJ** before any further proceedings; and

**K.** Order that all previously submitted emergency and supplemental motions (Jan 8-16, 2026) be deemed properly filed, considered on the merits, and incorporated into the record; and

**L. Order** that NO scheduling conference can occur until the until the administrative record is fully reconstructed, certified and reviewed de novo by a reassigned **ALJ**; and

**M.** Likewise, Order that no party may rely upon this proceeding in any NMB or PWA arbitration until the administrative record is fully reconstructed, certified and reviewed de novo by a reassigned ALJ.

**N. Any further just relief.**

12

Respectfully submitted,

Edward Farley, Complainant, Pro Se

472 Wallis Rd

Rye, NH 03870

e.farley@yahoo.com

January 18, 2026

VERIFICATION

I, Edward Farley, certify that the facts stated herein are true and correct to the best of my knowledge.

/s/ Edward Farley

January 18, 2026

CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2026, I served the foregoing via email upon:

- Emily M. Horjus – Horjus.Emily.M@dol.gov
- OALJ-Boston-Orders@dol.gov
- Lincoln O. Bisbee – lincoln.bisbee@morganlewis.com
- Lucas Hakkenberg – lucas.hakkenberg@morganlewis.com
- Imani D. Gunn – imani.d.gunn@morganlewis.com

/s/ Edward Farley

# UNITED STATES DEPARTMENT OF LABOR
## OFFICE OF ADMINISTRATIVE LAW JUDGES
## BOSTON, MASSACHUSETTS

**Issue Date: 22 January 2026**

OALJ NO.: 2025-AIR-00023

*In the Matter of:*

**EDWARD FARLEY,**
*Complainant,*

*v.*

**DELTA AIRLINES, INC.,**
*Respondent.*

## ORDER DENYING EMERGENCY MOTION FOR RECONSIDERATION

This case arises from a complaint filed by Edward Farley ("Farley" or "Complainant") against Delta Airlines, Inc. ("Delta" or "Respondent") under the employee protection provisions of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR21"), 49 U.S.C. § 42121. The formal hearing is scheduled for September 21, 2026.

## I.     Procedural Posture and Arguments of the Parties

On January 16, 2026, this Tribunal issued an Omnibus Order Denying Emergency Motions—specifically, Farley's Emergency Motion and the Supplemental Emergency Motion for Stay with Notice of Supporting Facts and Authorities, both filed on January 14, 2026. The January 16 Omnibus Order was the third formal Order issued in this matter concerning discovery matters and the deposition of Complainant in addition to the Notice of Hearing and Pre-Hearing Order issued on December 9, 2025, and several minute orders.

On January 18, 2026, Farley filed an Emergency Motion to Reconsider, Correct a Corrupted Record, Find Fraud Upon the Tribunal, Stay All Proceedings, and Reassign Presiding ALJ ("Jan. 18 Mot."). In the Motion, Farley argues that the Court has refused to engage with evidence regarding Federal Aviation Administration ("FAA") compliance and Delta's retaliation; has proceeded under AIR21 presuming the Occupational Safety and Health Administration ("OSHA") records were complete and reliable; has allowed discovery to proceed on an unlawful foundation; and has waived a mandatory 14-day period of notice for Complainant's deposition, noticed by Delta for January 22, 2026. Farley asserts that even though this matter consists of a *de novo* review of his claim, the Court is required by law to review all the materials relied upon by OSHA in its decision and must request the full administrative record

from OSHA. He objects to the denial of his three prior emergency motions. Farley also requests the following relief from the Court:

1. Reconsideration and reversal of the January 16, 2026, Omnibus Order;
2. Declaration that all further AIR21 proceedings are stayed;
3. A stay of all discovery and depositions;
4. An order prohibiting any reliance on parallel arbitration proceedings under the Pilot Working Agreement ("PWA"), which are set to take place in February of 2026;
5. Protection from the parallel PWA proceedings' use of the AIR21 proceeding;
6. An order requiring OSHA to produce everything it has to the Office of Administrative Law Judges ("OALJ");
7. A certification that the presiding judge has personally reviewed the OSHA documentation prior to issuing any orders;
8. A reconstruction and verification that the administrative record is complete;
9. A finding that Delta has manipulated evidence across parallel proceedings;
10. Reassignment of the case to a different administrative law judge ("ALJ");
11. An order that all previously submitted motions should be incorporated into the record;
12. An order that no scheduling conferences occur until the administrative record is fully reconstructed, certified, and reviewed by a new ALJ; and
13. An order that no party may rely on the parallel PWA proceedings in the AIR21 proceeding.

In opposition, Delta argues that Complainant "has made clear that he will continue to file successive and repetitive motions in an effort to delay this matter." Delta requests that this Tribunal deny Complainant's Jan. 18 Motion, asserting that reconsideration is not warranted where no evidence has been newly discovered and no legal error was made. Delta requests that this Tribunal compel Farley's compliance with its prior discovery orders, as Farley still has not produced any written discovery, and further instruct Farley that he must appear at his January 22, 2026, deposition. Finally, Delta asks that if Complainant continues to violate the Tribunal's discovery orders, the complaint should be dismissed as a sanction in accordance with 29 C.F.R. § 18.57(b)(v) ("If a party … fails to obey an order to provide or permit discovery, … the judge may issue further just orders. They may include the following: Dismissing the proceeding in whole or in part[.]").

In the January 16 Omnibus Order, the Court advised the Parties that if a Party wishes to file a supplement to a motion or provide a reply to an opposition, it must first ask leave of the Court, as set forth in 29 C.F.R. § 18.33(d): "Unless the judge directs otherwise, no further reply is permitted and no oral argument will be heard prior to the hearing." On January 20, 2026, Farley filed a Reply to Delta's Opposition without requesting leave of the Court. Farley's request to file a further reply is thus **DENIED**, and the contents of the Reply will not be considered.

## II.    Discussion

Turning to the request for reconsideration, this Tribunal notes that this is not the first request for reconsideration from Farley. In the Court's January 13, 2026, Omnibus Discovery

Order, this Tribunal granted Farley's motion for reconsideration so that it could clearly explain in detail that AIR21 was under *de novo* review apart from any of OSHA's determinations and the OSHA record; this Tribunal had no authority or jurisdiction with relation to the PWA proceedings; the Parties were obligated to abide by the Court's Orders concerning discovery; the discretionary authority of this Tribunal over the notice requirements for depositions; and the ability of the Court to render an impartial decision. The Court reiterated the above in the January 16 Omnibus Order.

However, as Farley has again requested reconsideration of this Tribunal's decisions, the Parties are advised as to the standards for reconsideration in AIR21 proceedings. As the Court has previously explained, and as is set out in the prehearing order in this case, Notice of Hrg. & Pre-hearing Order, ¶ II.1 (Dec. 9, 2025), proceedings before the OALJ are governed by the Rules of Practice and Procedures for Administrative Hearings set forth in 29 C.F.R. Part 18, subpart A & § 18.10 ("OALJ Rules"), and the Administrative Procedures Act, 5 U.S.C. §§551-559. If a specific Department of Labor regulation governs a proceeding (such as the regulations implementing AIR21, in this case), the provisions of that regulation also apply. 29 C.F.R. § 18.10(a). The Federal Rules of Civil Procedure only apply in a situation not otherwise provided for by the OALJ Rules or a governing statute, regulation, or executive order. *Id.*

The OALJ Rules instruct that a motion for reconsideration of a decision and order must be filed "no later than 10 days after service of the decision on the moving party." 29 C.F.R. § 18.93. However, the Rules are otherwise silent on the standard to be used in evaluating any such motion. As such, requests for reconsideration are properly evaluated under the Federal Rules of Civil Procedure, and specifically Rule 59(e), which governs motions to alter or amend judgments. A motion under Rule 59(e) serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence. Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly. Such a motion is not a proper vehicle for rehashing evidence, legal theories, or making arguments that could have been offered or raised before the entry of judgment, or that are more appropriately made on appeal. *See Edionwe v. Bailey*, 860 F.3d 287, 294-95 (5th Cir. 2017); *In re Prince*, 85 F.3d 314 (7th Cir. 1996); *Marcello v. Massachusetts Bay Transit Authority*, 2024-NTS-00005, PDF at 2 (ALJ Sep. 24, 2025) (Order Denying Mot. for Recon.).

In this instance, Farley's Jan. 18 Motion does not establish any mistake of law or fact or newly discovered evidence warranting reconsideration of the January 16 Omnibus Order, or the January 13 Omnibus Order that it references. Although Farley slightly reframes his arguments, the Jan. 18 Motion in its essence repeats Farley's previous motions and requests for relief that have already been addressed multiple times by this Tribunal. As such, the Jan. 18 Emergency Motion to Reconsider, Correct a Corrupted Record, Find Fraud Upon the Tribunal, Stay All Proceedings, and Reassign Presiding ALJ is **DENIED**.

Despite any arguments to the contrary, this matter is proceeding *de novo* before the Court. It is neither the responsibility of OSHA nor the duty of this Tribunal to track down the submissions made by any party to that agency. It is the Parties' obligation to pursue and obtain evidence in support of their own claims and defenses. If any party should choose to submit the same documents provided to OSHA also to this Tribunal, that party may file such documentation as exhibits, properly marked and paginated, as explained in the Notice of Hearing and Pre-

Hearing Order issued on December 9, 2025. To the extent that Farley asserts that Delta has retaliated against him, Complainant will have the full opportunity to prove his case at the formal hearing before this Tribunal, where he may call witnesses and rely upon the exhibits filed and admitted into the record by the Court. But it is his responsibility to prosecute his own case.

Turning to Delta's request that Farley be required to comply with its prior discovery orders, this request is **GRANTED**, as previous orders have already compelled him to do so. Complainant is instructed to respond the written discovery submitted by Delta **within seven (7) days**. *See* 29 C.F.R. § 18.57(a)(2). Complainant is also instructed to appear at his duly noticed deposition. *Id.* Failure to participate in the discovery process in good faith may subject the offending party to sanctions up to and including dismissal of the case.

**SO ORDERED.**



**JERRY R. DeMAIO**
Administrative Law Judge

Boston, Massachusetts

## SERVICE SHEET

Case Name:  **Farley_v_Delta_Airlines_Inc_**

Case Number: **2025AIR00023**

Document Title: **ORDER DENYING EMERGENCY MOTION FOR RECONSIDERATION**

I hereby certify that a copy of the above-referenced document was sent to the following this 22nd day of January, 2026:



**Matthew M. Schmall**
PARALEGAL SPECIALIST

OSHA-Region 2 Regional Administrator
OSHA-WB-REG-2@dol.gov
Regional Administrator
Region 2
U. S. Department of Labor, OSHA
Room 670
201 Varick St.
NEW YORK NY 10014
        *{Electronic - Regular Email}*

Associate Solicitor Fair Labor Standards
FLS-Filings@dol.gov
Associate Solicitor
Division of Fair Labor Standards
U. S. Department of Labor
Room N-2716, FPB
200 Constitution Ave., N.W.
WASHINGTON DC 20210
        *{Electronic - Regular Email}*

OSHA.DWPP@dol.gov
Director
Directorate of Whistleblower Protection Programs
U S Department of Labor, OSHA
Room N 4618 FPB
200 CONSTITUTION AVE NW
WASHINGTON DC 20210
        *{Electronic - Regular Email}*

Lincoln Bisbee
lincoln.bisbee@morganlewis.com
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
WASHINGTON DC 20004
        *{Electronic - Regular Email}*

Edward Farley
e.farley@yahoo.com
RYE NH 03870
        *{Electronic - Regular Email}*

Lucas Hakkenberg
lucas.hakkenberg@morganlewis.com
Morgan Lewis
101 Park Ave.
NEW YORK NY 10001

*{Electronic – Regular Email}*

**SERVICE SHEET** continued (2025AIR00023 Order)        Page: 2

Imani Gunn
imani.gunn@morganlewis.com
Morgan Lewis & Bockius
101 Park Ave
NEW YORK NY 10178
          *{Electronic – Regular Email}*

**Exhibit 3: NMB/PWA Arbitrator Bonnie Weinstock's Denial of Continuance (Jan 9, 2026)**

**Request for Immediate MEC and National Review – Section 18 Due Process Failures, Section 19 Eligibility, and Representation Concerns**

From:  ed farley (e.farley@yahoo.com)

To:    eric.criswell@alpa.org; mike.detorie@alpa.org; evan.baach@alpa.org; marc.cervantes@alpa.org; keith.eichenholz@alpa.org; aziz.day@alpa.org; suzanne.kalfus@alpa.org

Cc:    trkramer@sbcglobal.net

Date:  Friday, November 14, 2025 at 02:59 PM EST

Dear Chair Criswell, Ms. Kalfus, Mr. Detorie, and ALPA Representatives and Mr. Kramer (former C66 Captain representative):

I am submitting this summary because arbitration is now being placed on a timeline that cannot proceed unless Section 18 is first cured, and because several new individuals are involved who need full context.

I am writing to provide a clear, factual record for those newly reviewing my case at the MEC and National level.

My intent is transparency and accuracy, not accusation.

# 1. Background Overview – From 1997 to Present

I have been an ALPA member since **1997**, with a 28-year career marked by **100% positive performance**, consistent professionalism, and a long history of advocating for ethics, training integrity, and aviation safety.

In 2022, I expressed support for Ms. Petitt on ethics and professionalism grounds. Since that time, and supported by significant documented interactions with Delta management, I have continued to speak up in good faith about safety concerns, AQP execution, and procedural and company core policy compliance. Since that time I have also experienced actions and irregularities that **appear consistent with evidentiary retaliation and procedural avoidance,** particularly relating to AQP execution handling and my documented FAR-compliant performance.

Beginning in October 2023, during recurrent training, I immediately encountered irregular AQP execution and due-process deviations, including false allegations and omission of AQP FAR evidence confirming successful completion of required events. I repeatedly raised these

concerns by text, email, and phone with ALPA representatives. Despite this, I was terminated on October 31, 2024—**without any compliance with PWA §§18E.1 or 18E.2**, which were neither initiated nor addressed at any point. Instead, these required steps were avoided entirely.

My documented communications to ALPA occurred on:
- October–December 2023
- January–June 2024
- August 2024
- October 2024
- April 2025
- July and September 2025
- October 1, 2025
- October 21, 2025
- October 22, 2025
- November 11, 2025
- November 13, 2025
- Essentially October 16, 2023–present

Across all of these interactions, **the core procedural defects identified from the outset have remained identical and unresolved.**

# 2. Clarification of Mike's November 13, 2025 Statements

On November 13, 2025 Mr. Detorie wrote:

- "The MEC has diligently enforced your rights under the PWA."
- "Evan has provided all the documentation we possess about your case."
- "We are prepared for the arbitration."

With respect, and for the benefit of MEC and National review, the documented record does not align with these statements.

This clarification is not personal; it is necessary for contractual accuracy and to ensure that National ALPA has the correct procedural foundation.

# 3. Violations of PWA §18E1 – Critical Items and

# Due Process

**Contract Language (PWA §18E.1):**
A pilot must be furnished copies of all items of a "critical nature," must be given the opportunity to acknowledge, and must be allowed a responsive statement.
Items not acknowledged **may not be used** in any investigation or discipline/discharge.

**Delta did not do this.**
**ALPA did not enforce this.**

No critical items were provided.
No acknowledgment was obtained.
No responsive statement was permitted.
No authentic grievance opportunity was offered before discharge.

This renders the §18 process **invalid on its face.**

---

# 4. Violations of PWA §18E1 18E2 – Access to Company Files

**Contract Language (PWA §18E.2):**
A pilot must be allowed to review all company files pertaining to them upon reasonable request.

I repeatedly requested access from 2024 to present.
Delta denied these requests.
ALPA did not enforce §18E.2 at any stage.

This alone breaks the chain of contractual due process.

---

# 5. PWA §19D.3 – Arbitration Cannot Proceed Unless Section 18 Was Handled

**Contract Language (PWA §19D.3):**
"The Board will not consider any dispute unless that dispute **has been handled** under Section 18."

Section 18 was **not** handled:

- No lawful §18E.1 critical-items process
- No §18E.2 access to company files
- No §18E1 investigation interview
- No notice with required disclosures
- No opportunity for written response
- No pre-discharge due process

- No complete Section 18 record

Therefore, a Section 19 arbitration **cannot be contractually triggered**.

Any attempt to move forward without curing these violations is inconsistent with the plain language of the PWA.

# 6. PWA §19H1 – Rights and Required Access

To meaningfully participate in §19 procedures, I must have access to:

- FOM
- Airway Manual
- FCTM
- 7ER Vols 1 & 2
- OE/TOE Guide
- Bulletins
- CSC 7ER Welcome Correspondence
- AQP oversight materials
- Instructor qualification/monitoring materials
- All reference materials used in evaluation

None of these have been provided by ALPA or Delta and what was provided was done only at my insistence.

Thus, ALPA's statement that "all documentation we possess" has been provided is inconsistent with the documents required for representation.

# 7. "Above and Beyond" – Record Does Not Support This

At the September 2 luncheon, Evan stated that FAR 121.434 issues were a "gray area," yet there was:

- No 18E1 investigation
- No documentary review
- No AQP execution data request
- No FAR interpretation
- No analysis of OE supervision requirements
- No challenge to Delta's deviation from AQP execution

These are required steps, not optional ones.

# 8. Arbitration Preparation – Conflicting Statements

Earlier:
ALPA stated preparation would occur **one month before the hearing**. Because of the severity, harm to my career and timeline of being one year since termination, I requested (several times) an Arbitrator draft submission to begin review 6 weeks ago, I have received no response.

Yesterday:
I was told preparation would occur **the day before**, with "a few phone calls."

This is inconsistent with the complexity of the case and inconsistent with §19H obligations.

No draft DFR submission has been provided to me, despite my repeated requests since early October.

# 9. Required Clarifications

For MEC and National review, please provide written answers to:

1. Does ALPA acknowledge that Delta failed §18E.1 and §18E.2?
2. How can ALPA certify arbitration readiness under §19D.3 when Section 18 was not handled?
3. How does ALPA reconcile missing operational and AQP documents with §19H1?
4. What independent investigation has ALPA conducted?
5. Why was preparation changed from "one month prior" to a "day-before" session?
6. How can ALPA say all documentation is in its possession when essential training and AQP materials are not?
7. Why was OSHA case information discussed with investigators without documentation for me?

These must be resolved before any arbitration proceeds.

# 10. Notice of Rights

This is not refusal to participate.
This is preservation of my rights under the:

- **PWA**
- **RLA**
- **AIR21 whistleblower protections**

A Section 19 arbitration cannot lawfully proceed until a proper Section 18 process has occurred and the required documents and due-process protections are restored.

I not only speak up for myself, I speak up for all of us. No pilot is an island. We are all required to speak up against misconduct and for safety.

# 11. Request for Immediate Action

I respectfully request:

- Confirmation that MEC and National ALPA have received this escalation.
- A written position on §§18E.1, 18E.2, 19D.3, and 19H1.
- When agreed §§18E.1, 18E.2 were indeed violated, 19D.3 requires a stay on the arbitration and refocus on §§18E.1, 18E.2 compliance.
- Production of any DFR or arbitration submissions prepared to date for review.
- A timeline for corrective action and document acquisition.

# ALPA Vision, Mission, and Strategic Alignment

## 12. Alignment with ALPA's Stated Mission, Vision, and Strategic Goals

I want to highlight that my requests in this letter are fully consistent with ALPA's own Vision Statement and guiding principles. ALPA's official Vision states:

*"The Air Line Pilots Association, International, will spare no effort to aggressively fight for the rights and needs of airline pilots… We are committed to the principle that our profession is best served by unifying all pilots within our union… When one ALPA pilot has a problem, all ALPA pilots have a problem."*

The Strategic Goals emphasize that our Union will:

- *"Negotiate and enforce improved CBAs,"*
- *"Increase contract compliance,"*
- *"Ensure our members have the ability to operate safely and protect the traveling public,"*
- *"Aggressively fight for the rights and needs of airline pilots,"*
- *"Act decisively to move the pilots' agenda forward,"* and
- *"Apply political and contractual expertise to reduce risk in the industry."*

My request is simply that these commitments be applied to my case.

The concerns I am raising about Section 18 compliance, AQP execution irregularities, and due-process omissions fall squarely within the scope of ALPA's mission:

- **Contract enforcement**
- **Due-process protection**
- **Safety integrity**
- **Solidarity**
- **Protection from retaliation or procedural misuse**

These are not personal grievances—they are contractual requirements that protect every pilot. Ensuring proper handling under §§18E.1, 18E.2, and 19D.3 is not only required by the PWA, but also

directly aligned with ALPA's stated purpose and goals. Proper handling of 19H1 must be complied with (during any arbitration) and when arbitration process is restored. In this matter there is authentic reason that arbitration is not applicable.

**I am prepared to engage fully as soon as due process is restored.**


Thank you for your time and prompt attention.

**Respectfully,**
**Edward Farley 410698**

**Dated November 14, 2025**


Attached is a formatted PDF version of this communication for your records. The full text is also included below for immediate review.

_____


 11-14-2025 pdf Request for Immediate MEC and National Review – Section 18 Due Process Failures, Section 19 Eligibility.pdf
171.4 KB

## Re: Arbitration Posture and PWA Compliance Concerns

From: Detorie, Mike, Representation (mike.detorie@alpa.org)

To: e.farley@yahoo.com; Evan.Baach@alpa.org; Marc.Cervantes@alpa.org; Keith.Eichenholz@alpa.org; Aziza.Day@alpa.org

Date: Friday, January 9, 2026 at 04:24 PM EST

Ed,

See attached. I will let you know when Arbitrator Weinstock issues an interim award on the motion. The Association has diligently pursued due process on your behalf and reserves the right to take whatever action may be appropriate in light of your willingness, or lack thereof, to actively participate in this process moving forward.

Best,

Mike



**Mike Detorie**
*Counsel, Air Line Pilots Association, International*
Privileged/Confidential as Applicable

---

**From:** ed farley <e.farley@yahoo.com>
**Sent:** Wednesday, January 7, 2026 4:14 PM
**To:** Detorie, Mike, Representation <Mike.Detorie@alpa.org>; Baach, Evan, DAL066 Chair/Captain Rep <Evan.Baach@alpa.org>; Cervantes, Marc, DAL066 Vice Chair/FO Rep <Marc.Cervantes@alpa.org>; Eichenholz, Keith, Representation <Keith.Eichenholz@alpa.org>; Day, Aziza, Representation <Aziza.Day@alpa.org>
**Subject:** Arbitration Posture and PWA Compliance Concerns

Arbitration Posture and PWA Compliance Concerns

Mike,

Given the most recent developments and filings, the arbitration and PWA compliance issues (including intertwined parallel arbitration) are now directly before the Court in the AIR21 proceeding.

In light of the ongoing concerns regarding Sections 11, 18, and 19 compliance and the risk of prejudicial or procedurally compromised arbitration, I urge that the Association neither proceed with, nor withdraw from, the February 11 arbitration unless and until impartial safeguards and full PWA compliance are confirmed.

Please confirm that ALPA will not take action that would either (1) advance a biased or non-compliant arbitration process, or (2) withdraw the grievance in a manner that further prejudices my rights or remedies.

Thank you,
Edward

 Email to Arb. Weinstock with Motion Attached 2026-01-09.pdf
1.2 MB

 ALPA Motion to Continue-Reschedule System Board Hearing - Grievance 24-35 (Discharge of Captain Edward Farley) 2026-01-09.pdf
3.4 MB

 Relay Receipt 2026-01-09.pdf
99.5 KB

 Email to Arb. Weinstock with Motion Attached 2026-01-09.pdf
1.2 MB

 ALPA Motion to Continue-Reschedule System Board Hearing - Grievance 24-35 (Discharge of Captain Edward Farley) 2026-01-09.pdf
3.4 MB

 Relay Receipt 2026-01-09.pdf
99.5 KB

**From:** Bonnie Weinstock <arbwein@gmail.com>
**Sent:** Friday, January 9, 2026 5:50 PM
**To:** Bell, Lilia R <lilia.bell@delta.com>; Bonnie Weinstock <arbwein@gmail.com>
**Cc:** Detorie, Mike, Representation <Mike.Detorie@alpa.org>; lincoln.bisbee@morganlewis.com
<lincoln.bisbee@morganlewis.com>; Eichenholz, Keith, Representation
<Keith.Eichenholz@alpa.org>
**Subject:** Re: [EXTERNAL] Re: Delta-ALPA

Counsel:

I have received the Union's Motion to Continue/Reschedule the System Board Hearing
scheduled for February 10-12, 2026 and the Employer's opposition thereto. The Union's Motion
is denied for several reasons. First and foremost, according to the Union's Motion, the grievance
in this matter was heard and considered under Section 18 of the Pilot Working Agreement
("PWA") and then appealed to the Five Member Board under the PWA. The undersigned was
selected as the Arbitrator on June 5, 2025. Potential dates for hearing were offered to the parties
and on June 12, 2025, in an email at 11:09 AM, the parties agreed that the hearing would take
place on February 10-12, 2026 in New York City. The Arbitrator has no reason to believe that
the request to grieve the termination of employment was filed other than at the request of and
with the agreement of Captain Edward Farley.

According to the Union's Motion, at some point, Captain Farley then filed a whistleblower
complaint which is scheduled for hearing before the U.S. Department of Labor Office of
Administrative Law Judges on September 21, 2026. The Union seeks to stay the instant
arbitration until after the whistleblower hearing (a/k/a "AIR21 proceeding").

The Arbitrator denies the Union's Motion to Continue/Reschedule the System Board
Hearing. The Arbitrator certainly understands the Union's and the Grievant's reasons for wanting
the continuance. However, both proceedings were initiated at the Grievant's request. He is free
to decide that he prefers to proceed in one forum over another for a variety of different
reasons. Therefore, unless the Union, on the Grievant's behalf, chooses to withdraw the instant
matter from the System Board, the hearing on this case will commence on February 10, 2026 and
will proceed on the succeeding days as scheduled.

Bonnie Siber Weinstock

**Exhibit 4: Renewed Notice to ALPA regarding Jurisdictional and Due-Process Defects (February 3, 2026)**

GRV 24-35 (Farley) - 5MB

From: Detorie, Mike, Representation (mike.detorie@alpa.org)

To: mark.hinczynski@alpa.org; trevor.boswell@alpa.org; samuel.mason@alpa.org; bill.bartels@alpa.org

Cc: keith.eichenholz@alpa.org; donielle.johnston@alpa.org; evan.baach@alpa.org; e.farley@yahoo.com;
lyndell.prosser@alpa.org; mike.detorie@alpa.org

Date: Tuesday, February 3, 2026 at 12:56 PM EST

## Westin Flushing
## 35-36 Leavitt Street
## Flushing, NY 11354

Hearing Room: Northern C (2/10/26 - 2/12/26 starting @ 9:00 AM)

ALPA Prep Room: Northern A (2/9/26 @ 9:00 AM)

Breakfast and lunch will be catered on the prep day and the hearing days.

Bill and Sam,

Please let me know if you would like to jump on a call to discuss this case before next week.

Best,



*Mike Detorie*
*Counsel, Air Line Pilots Association, International*

Privileged/Confidential as Applicable

 Untitled
3.5 KB

**Subject: Formal Notice and Warning — Duty of Fair Representation Denial and Continued Unlawful PWA-Arbitration Actions**

From:  ed farley (e.farley@yahoo.com)

To:  evan.baach@alpa.org; marc.cervantes@alpa.org

Date:  Tuesday, February 3, 2026 at 02:45 PM EST

Subject: Formal Notice and Warning — Duty of Fair Representation Denial and Continued Unlawful PWA-Arbitration Actions

Evan, Marc,

This email serves as formal notice and warning.

You are aware, or should be aware, that I provided multiple formal notices and warnings (especially on November 14, 2025, and February 3, 2026), identifying collective bargaining agreement jurisdictional and due-process defects that render the pending arbitration unlawful, including conflicts with ongoing AIR21 whistleblower proceedings and noncompliance with PWA Sections 11, 18, and 19.

To date, no corrective action has been taken. **Proceeding with arbitration under unresolved jurisdictional and due-process defects after repeated formal notices and warnings constitutes a breach of the Union's duty of fair representation and exposes the process to judicial scrutiny.**

I am strongly urging you both, as my direct Union representatives, not to stand idle when you both are well aware of these unlawful collective bargaining agreement noncompliances. I trusted you both to ensure compliance. While I cannot compel anyone to perform their duties, I will pursue accountability for witnessed and documented inaction. The ongoing abuse of AQP and PWA due process, and the resulting threat to my career, must be halted immediately.

I am preserving the record, accordingly, reserving all rights, and will proceed with all necessary federal protections.

I expect acknowledgement of this notice and warning. Silence will be noted as part of the administrative record.

Ed

## Subject: Formal Notice and Warning of Continued DFR Denial

From:  ed farley (e.farley@yahoo.com)

To:    mark.hinczynski@alpa.org; trevor.boswell@alpa.org; samuel.mason@alpa.org; bill.bartels@alpa.org; mike.detorie@alpa.org

Cc:    keith.eichenholz@alpa.org; donielle.johnston@alpa.org; evan.baach@alpa.org; lyndell.prosser@alpa.org

Date:  Tuesday, February 3, 2026 at 01:53 PM EST

Subject: Formal Notice and Warning of Continued DFR Denial

Mike,

Clearly, my formal Notice and Warning in my previous email on February 3, 2026, at 13:14, went overlooked—no surprise.

These emails today constitute a deepening denial of DFR, demonstrating gross disrespect for my nearly 30-year ALPA career and the mission of the Union. ALPA's representation has consistently breached its duty of fair representation, now contested as a denial of DFR constituting unlawful arbitration. To date, the Union has failed to address PWA Section 11 and 18 compliance, which voids the arbitration.

Yet again, the Union presses collective bargaining procedure over lawful logistics, creating the illusion of authentic due process compliance that does not exist.

Noted.

Ed

On Tuesday, February 3, 2026 at 01:14:49 PM EST, ed farley <e.farley@yahoo.com> wrote:

Re: Arbitration Scheduling

Mike,

This correspondence constitutes renewed formal notice and warning.

I note the logistical information below.

I am in the process of filing a federal action. Proceeding without curing the jurisdictional and due-process defects previously identified risks prejudicing statutory rights and inviting judicial review.

As provided in writing on November 14, 2025, this arbitration presents unresolved jurisdictional and due-process defects, including conflicts with pending AIR21 whistleblower proceedings and materially defective process.

Those issues remain unremedied.

I reserve all rights.

Ed

On Tuesday, February 3, 2026 at 12:56:45 PM EST, Detorie, Mike, Representation <mike.detorie@alpa.org> wrote:

## **Westin Flushing**
## **35-36 Leavitt Street**
## **Flushing, NY 11354**

## Hearing Room: Northern C (2/10/26 - 2/12/26 starting @ 9:00 AM)

## ALPA Prep Room: Northern A (2/9/26 @ 9:00 AM)

## Breakfast and lunch will be catered on the prep day and the hearing days.

Bill and Sam,

Please let me know if you would like to jump on a call to discuss this case before next week.

Best,



**Mike Detorie**
*Counsel, Air Line Pilots Association, International*

Privileged/Confidential as Applicable

**Subject: Formal Notice and Warning — Duty of Fair Representation Denial and Continued Unlawful PWA-Arbitration Actions**

From:  ed farley (e.farley@yahoo.com)

To:    evan.baach@alpa.org; marc.cervantes@alpa.org

Date:  Tuesday, February 3, 2026 at 02:45 PM EST

Subject: Formal Notice and Warning — Duty of Fair Representation Denial and Continued Unlawful PWA-Arbitration Actions

Evan, Marc,

This email serves as formal notice and warning.

You are aware, or should be aware, that I provided multiple formal notices and warnings (especially on November 14, 2025, and February 3, 2026), identifying collective bargaining agreement jurisdictional and due-process defects that render the pending arbitration unlawful, including conflicts with ongoing AIR21 whistleblower proceedings and noncompliance with PWA Sections 11, 18, and 19.

To date, no corrective action has been taken. **Proceeding with arbitration under unresolved jurisdictional and due-process defects after repeated formal notices and warnings constitutes a breach of the Union's duty of fair representation and exposes the process to judicial scrutiny.**

I am strongly urging you both, as my direct Union representatives, not to stand idle when you both are well aware of these unlawful collective bargaining agreement noncompliances. I trusted you both to ensure compliance. While I cannot compel anyone to perform their duties, I will pursue accountability for witnessed and documented inaction. The ongoing abuse of AQP and PWA due process, and the resulting threat to my career, must be halted immediately.

I am preserving the record, accordingly, reserving all rights, and will proceed with all necessary federal protections.

I expect acknowledgement of this notice and warning. Silence will be noted as part of the administrative record.

Ed

Re: Subject: Formal Notice and Warning — Duty of Fair Representation Denial and Continued Unlawful PWA-Arbitration Actions

From: ed farley (e.farley@yahoo.com)

To: evan.baach@alpa.org; marc.cervantes@alpa.org

Cc: mike.detorie@alpa.org

Date: Tuesday, February 3, 2026 at 06:58 PM EST

Formal Notice and Warning — Duty of Fair Representation Denial and Continued Unlawful PWA-Arbitration Actions

Evan, Marc, Mike,

I am including counsel on this correspondence to ensure full notice. I note for the record that Evan Baach acknowledged receipt of my prior notice and forwarded it to counsel.

This email serves as formal notice and warning.

You are all aware, or should be aware, that I provided multiple formal notices and warnings (including on November 14, 2025, and February 3, 2026), identifying collective bargaining agreement jurisdictional and due-process defects that render the pending arbitration unlawful, including conflicts with ongoing AIR21 whistleblower proceedings and noncompliance with PWA Sections 11, 18, and 19.

To date, no authentic and accountable corrective action has been taken to address these defects. Union counsel denying my justified and specific Motion to Reconsider the Arbitrator's January 9, 2026, denial order was unacceptable. **Proceeding with arbitration under unresolved jurisdictional and due-process defects after repeated formal notice and opportunities to cure defects constitutes a breach of the Union's duty of fair representation and exposes the process to judicial scrutiny.**

I am again urging my direct Union representatives and counsel not to stand idle when these unlawful collective bargaining agreement noncompliances are known and documented. While I cannot compel action, I will pursue accountability for witnessed and documented inaction.

I am preserving the record, accordingly, reserving all rights, and will proceed with all necessary federal protections.

Please acknowledge receipt of this notice. Any continued silence will be noted as part of the administrative and judicial record.

Ed

On Tuesday, February 3, 2026 at 04:26:33 PM EST, Baach, Evan, DAL066 Chair/Captain Rep <evan.baach@alpa.org> wrote:

Received.

Evan Baach

**Council 66 Chair and Captain Representative**

Air Line Pilots Association, Int'l

(m) 202-550-2075

---

**From:** ed farley <e.farley@yahoo.com>
**Sent:** Tuesday, February 3, 2026 2:45:19 PM
**To:** Baach, Evan, DAL066 Chair/Captain Rep <Evan.Baach@alpa.org>; Cervantes, Marc, DAL066 Vice Chair/FO Rep <Marc.Cervantes@alpa.org>
**Subject:** Subject: Formal Notice and Warning — Duty of Fair Representation Denial and Continued Unlawful PWA-Arbitration Actions

Subject: Formal Notice and Warning — Duty of Fair Representation Denial and Continued Unlawful PWA-Arbitration Actions

Evan, Marc,

This email serves as formal notice and warning.

You are aware, or should be aware, that I provided multiple formal notices and warnings (especially on November 14, 2025, and February 3, 2026), identifying collective bargaining agreement jurisdictional and due-process defects that render the pending arbitration unlawful, including conflicts with ongoing AIR21 whistleblower proceedings and noncompliance with PWA Sections 11, 18, and 19.

To date, no corrective action has been taken. **Proceeding with arbitration under unresolved jurisdictional and due-process defects after repeated formal notices and warnings constitutes a breach of the Union's duty of fair representation and exposes the process to judicial scrutiny.**

I am strongly urging you both, as my direct Union representatives, not to stand idle when you both are well aware of these unlawful collective bargaining agreement noncompliances. I trusted you both to ensure compliance. While I cannot compel anyone to perform their duties, I will pursue accountability for witnessed and documented inaction. The ongoing abuse of AQP and PWA due process, and the resulting threat to my career, must be halted immediately.

I am preserving the record, accordingly, reserving all rights, and will proceed with all necessary federal protections.

I expect acknowledgement of this notice and warning. Silence will be noted as part of the administrative record.

Ed